IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**CTIA – THE WIRELESS ASSOCIATION**,

   Plaintiff,

   v.

**TELECOMMUNICATIONS REGULATORY BOARD OF PUERTO RICO**, *et al.*,

   Defendants.

Civil No. 12-1104 (FAB/BJM)

## REPORT AND RECOMMENDATION

"CTIA – The Wireless Association" ("CTIA"), an organization representing the wireless communications industry, sued for declaratory and injunctive relief against the Telecommunications Regulatory Board of Puerto Rico, its members in their official capacities,[1] and Governor Luis Fortuño in his official capacity (collectively, "defendants"), alleging that Law No. 280 of December 27, 2011 ("Law 280" or "the Registry Act") is invalid because it is preempted by the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 *et seq.* (Docket No. 1, hereinafter "Compl.").

Before the court is CTIA's motion for a preliminary injunction, consolidation with trial on the merits, and for final relief. (Docket No. 2). Defendants opposed, and simultaneously moved to dismiss the complaint. (Docket No. 13). CTIA opposed the motion to dismiss (Docket No. 21) and defendants replied (Docket No. 25). The matter was referred to me for a report and recommendation. (Docket No. 16). For the reasons that follow, I recommend that defendants' motion to dismiss be **denied**.

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss at the pleading stage, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-

---

[1] The named board members are President Sandra E. Torres-López and Associate Members Gloria Escudero-Morales and Nixyvette Santini-Hernández.

Case 3:12-cv-01104-FAB   Document 31   Filed 06/15/12   Page 2 of 11

CTIA – The Wireless Association v. Telecommunications Regulatory Board of Puerto Rico   Page 2
Civil No. 12-1104 (FAB/BJM) – Report and Recommendation

Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). A court parses the allegations of the complaint in two steps. First, "'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action'" are identified and completely disregarded. Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949–50 (2009)) (alteration marks omitted). The remaining "[n]on-conclusory factual allegations" are then "treated as true, even if seemingly incredible." Id. The overall standard is only satisfied if those facts "state a plausible, not a merely conceivable, case for relief"; however, a court must not "attempt to forecast a plaintiff's likelihood of success on the merits." Id.

## FACTUAL ALLEGATIONS OF THE COMPLAINT

The bulk of the complaint consists of legal arguments and conclusions about how the laws at issue should be construed, rather than factual assertions taken as true at this stage. Setting those portions of the complaint aside, the factual allegations are as follows: CTIA member companies AT&T, Sprint, and T-Mobile, among others, sell mobile telephones in Puerto Rico (Compl., ¶ 8), Law 280 was passed on December 5, 2011 (id., ¶ 19), and the Governor signed it into law on December 27, 2011 (id., ¶ 20). I discuss the contents and construction of the laws themselves below.

## DISCUSSION

CTIA argues that the Registry Act is preempted because complying with Commonwealth law would violate the federal prohibition on certain disclosures of customer information to governmental entities. (Compl., ¶¶ 33-37). Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, any Puerto Rico law that "interferes with or is contrary to federal law" is void. Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 323 (1st Cir. 2012) (quoting Free v. Bland, 369 U.S. 663, 666 (1962)). Federal law is presumed *not* to have preemptive effect; that presumption is overcome "only in the face of clear and contrary congressional intent." Id. (citing City of Columbus v. Ours Garage and Wrecker Serv., Inc., 536 U.S. 424, 432 (2002)). Absent an express statement of preemption, courts "must look to the structure and purpose of the statute." Id.

Case 3:12-cv-01104-FAB   Document 31   Filed 06/15/12   Page 3 of 11

CTIA – The Wireless Association v. Telecommunications Regulatory Board of Puerto Rico       Page 3
Civil No. 12-1104 (FAB/BJM) – Report and Recommendation

(citing Barnett Bank of Marion Cnty., N.A. v. Nelson, 517 U.S. 25, 31 (1996)).  Importantly, Congressional intent to preempt state law may be inferred where compliance with both federal and state law would be impossible, or "where the state law stands as an obstacle to the accomplishment and execution" of federal objectives.  Id. at 323-24 (quoting La. Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 368-69 (1986)).

Defendants offer two constructions of the SCA that would avoid preemption, arguing that the Registry Act only collects information that is (1) within an exception to the SCA, and (2) outside the scope and purpose of the SCA.[2]  (Docket No. 14).  I begin by analyzing the two statutes and identifying the requirements each imposes, addressing defendants' arguments about the proper construction of the SCA.  I then proceed to the preemption analysis as such.

## I.   Required Disclosures under the Puerto Rico Registry Act

The challenged provision of the Registry Act requires "[e]very . . . natural or legal person . . . that sells a pre-paid mobile telephone unit" to examine the purchaser's photo identification, and provide the Commonwealth with the purchaser's name, physical address, postal address, and an alternate telephone number, as well as the telephone's unit number, make, model, and serial number.  Law 280 § 5.[3]  In addition, every "telephone company" that has ever sold such equipment must submit a list of prepaid telephone numbers within 30 days of the law's effective date, along with any of the other information it may have.  Id.  Noncompliance may be sanctioned by an administrative fine of up to $25,000 per violation.  Id. § 8.

## II.   The Federal Prohibition on Disclosures to Governmental Entities

The SCA, in relevant part, prohibits any public provider of an "electronic communication service" (ECS) from knowingly divulging any non-contents "record or other information

---

[2] Defendants also argue that "[t]he Registry Act is consistent with the protection afforded by the Fourth Amendment, which protects the privacy of telephone communications, but not of telephone numbers or the name of the party to whom the number belongs." (Docket No. 14, p. 8-9). But as CTIA correctly observes, its theory of relief is preemption by conflict with an Act of Congress, not with the Fourth Amendment. (See Docket No. 21, p. 5). Thus, defendants' analysis builds and attacks a straw man, and need not be considered any further.

[3] The quoted language comes from the unofficial and uncertified translation CTIA submitted with its complaint. (Docket No. 1-1). As of this date, the Puerto Rico Office of Legislative Services has not published an official English translation of Law 280 online. Defendants have not objected to the unofficial translation, and have not argued for any different interpretation of Law 280's requirements.

Case 3:12-cv-01104-FAB   Document 31   Filed 06/15/12   Page 4 of 11

CTIA – The Wireless Association v. Telecommunications Regulatory Board of Puerto Rico   Page 4
Civil No. 12-1104 (FAB/BJM) – Report and Recommendation

pertaining to a subscriber to or customer of such service" to a governmental entity. 18 U.S.C. § 2702(a)(3). An ECS includes any service providing its users with "the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15); see § 2711(1) (incorporating § 2510). Therefore, the SCA will generally apply to any provider of telephone services, since the term "wire communication" means any transmission of human voice at least partly by "wire, cable, or other like connection" through facilities offered for purposes of transmitting communications in or affecting interstate or foreign commerce. See §§ 2510(1), 2510(18). A civil cause of action lies against knowing or intentional violators of the SCA, providing for injunctive relief, damages liability of at least $1,000, punitive damages for willful or intentional violations, and attorney's fees and costs. 18 U.S.C. § 2707(a)-(c). However, a provider making a disclosure "under" the SCA is immune from liability under any cause of action. 18 U.S.C. § 2703(e).

### A.     Exceptions to Liability

Defendants argue that the Registry Act's disclosure requirement is consistent with one of the exceptions to provider liability. A provider is not liable for disclosures made (1) "as otherwise authorized in section 2703"; (2) when the customer provides "lawful consent"; (3) when disclosure is "necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service"; (4) when a disclosure is made in good-faith cases of emergency; (5) in connection with reporting child pornography under 18 U.S.C. § 2258A; and (6) "to any person other than a governmental entity." § 2702(c). Section 2703, in turn, enumerates non-content information that providers must disclose to a government agency when the agency uses an appropriate subpoena, warrant, court order, or telemarketing fraud information request, or when the customer consents. § 2703(c)(2). That information includes: the subscriber's name, address, telephone connection records or session time and duration records, the length of time that subscriber has used the service, the types of service utilized, the telephone or other identifying numbers assigned to the subscriber, and the means and source of

Case 3:12-cv-01104-FAB   Document 31   Filed 06/15/12   Page 5 of 11

CTIA – The Wireless Association v. Telecommunications Regulatory Board of Puerto Rico      Page 5
Civil No. 12-1104 (FAB/BJM) – Report and Recommendation

payment for the service, including account numbers. § 2703(c)(2)(A)-(F). To compel disclosure of any *other* non-content "record or other information pertaining to a subscriber," the government may not rely on a subpoena, but must instead use an appropriate warrant, court order, or telemarketing fraud information request, or the customer must provide consent. See § 2703(c)(1).

Defendants argue that the Registry Act's disclosure requirement comes within the exception in 18 U.S.C. § 2702(c)(3), which permits disclosures "as may be necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service." They base this argument on the FCC's analysis of the interaction between its revised Lifeline benefits program and the SCA.[4] (Docket No. 14, p. 10-13) (citing In re Lifeline and Link Up Reform and Modernization, FCC No. 12-11 (Feb. 6, 2012) (report, order, and further notice of proposed rulemaking), http://transition.fcc.gov/Daily_Releases/Daily_Business/2012/db0601/FCC-12-11A1.pdf). Lifeline is a program providing discounts on basic telephone service to low-income households. Id., ¶¶ 12-14. In its order, the FCC established a database designed to prevent households from receiving "duplicative" support—that is, receiving more discounts than they are entitled to by getting extra service with more than one resident in the same household, or service from more than one telephone company for the same individual. Id., ¶¶ 179-180. The new regime requires participating telephone companies to submit the names, addresses, telephone numbers, social security numbers, and other information regarding Lifeline subscribers to a central database. Id., ¶ 218. With respect to the SCA, the FCC concluded that the required submissions were "necessarily incident to the rendition of the service" as contemplated in § 2702(c)(3) and thus did not trigger liability, reasoning that "[t]he Lifeline program must be run efficiently and in compliance with the principles in [47 U.S.C.] section 254, including the public interest, convenience, and necessity" Id. at ¶ 219. The FCC also reached a parallel conclusion

---

[4] I treat the FCC's analysis as merely persuasive authority. See also Citizens Awareness Network, Inc. v. United States, 391 F.3d 338, 349 (1st Cir. 2004) (in administrative review context, "agencies' interpretations of statutes they do not administer are not entitled to particular deference.").

Case 3:12-cv-01104-FAB   Document 31   Filed 06/15/12   Page 6 of 11

CTIA – The Wireless Association v. Telecommunications Regulatory Board of Puerto Rico   Page 6
Civil No. 12-1104 (FAB/BJM) – Report and Recommendation

that its enabling statute empowers it to require subscriber information notwithstanding the SCA. Id.

Drawing a strained comparison, defendants argue that the Registry Act falls under the same exception because it collects information that is less private than the FCC gathers for its Lifeline database, and because both programs share the goal of promoting compliance with the law. (Docket No. 14, p. 12-13). This argument does not withstand scrutiny. First, the plain meaning of "necessarily incident to the rendition of the service" does not invite any consideration of the degree of privacy or sensitivity of the information at issue. In other words, even the disclosure of a subscriber's name alone would be outside § 2702(c)(3), unless it was "necessarily incident" to rendering service, or to protecting the provider's property or rights. Second, defendants' interpretation of the exception as permitting disclosures "increasing the lawful use of pre-paid mobile telephones and reducing the use of those phones to commit crimes" would swallow the rule. (See Docket No. 14, p. 13). By defendants' reasoning, any (and thus, every) state could exempt its law enforcement agencies from the SCA's requirements by enacting legislation with the purpose of reducing crimes committed using a particular communications device or service. But Congress expressly chose to restrict governmental agencies' power to obtain certain information, crafting an intricate system of judicial review with standards that vary depending on the information sought. See generally Orin S. Kerr, A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It, 72 Geo. Wash. L. Rev. 1208 (2004). Since defendants' position has the absurd result of allowing states to bypass this system at will, it cannot be the correct interpretation of the statute.

Additionally, CTIA offers several grounds for distinguishing Lifeline's database from the Puerto Rico registry, two of which I find persuasive, and neither of which are challenged by the defendants. First, CTIA correctly notes that the Lifeline database's purpose is closely coupled to the service being provided; the disclosures to the subscriber database combat customer fraud in obtaining the subsidized service itself. (Docket No. 21, p. 7). In contrast, defendants have not

Case 3:12-cv-01104-FAB   Document 31   Filed 06/15/12   Page 7 of 11

CTIA – The Wireless Association v. Telecommunications Regulatory Board of Puerto Rico     Page 7
Civil No. 12-1104 (FAB/BJM) – Report and Recommendation

articulated how the disclosures to the Puerto Rico prepaid telephone registry bear any necessary relationship to a service being provided.  Second, CTIA argues that the Lifeline program requires telephone companies to obtain express consent prior to disclosing customer information, likely satisfying the consent exception in 18 U.S.C. § 2702(c)(2).  The Registry Act does not require that such consent be obtained.  (Id.).  For these reasons, I do not find that § 2702(c)(3) exempts the disclosures mandated under the Registry Act from the prohibition of § 2702(a)(3).

> B.    "Record or Other Information"

The defendants also contend that contend that the SCA "does not protect information that is not tied to a specific electronic communication."  (Docket No. 14, p. 7).  Section 2702 prohibits the disclosure of a "record or other information pertaining to a subscriber to or customer of" a service, but does not define that phrase.  But it is a "basic canon of statutory construction that identical terms within an Act bear the same meaning."  See Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 479 (1992); Hernández-Miranda v. Empresas Díaz Massó, Inc., 651 F.3d 167 (1st Cir. 2011) ("[U]nder normal rules of statutory construction, identical words used in different parts of the same act are intended to have the same meaning.") (internal quotation marks and citation omitted).  Here, the structure of § 2703 sheds light on what is necessarily included in the meaning of the phrase.  Subsection (c)(1) limits the government's ability to require the disclosure of "a record or other information" unless one of five conditions is satisfied, the fifth of which is that it "seeks information under paragraph (2)."  § 2703(c)(1)(E).  Paragraph (2), in turn, requires providers to disclose the subscriber's name, address, connection or session records, service numbers, or means of payment if the government uses an administrative, grand jury, or trial subpoena, or if it uses "any means available under paragraph (1)."  § 2703(c)(2).

This permits two conclusions about the meaning of "record or other information" in the statute.  First, since requiring "information under paragraph (2)"—name, address, and so forth— is one of the "only" cases in which a governmental entity may require disclosure of a "record or

Case 3:12-cv-01104-FAB   Document 31   Filed 06/15/12   Page 8 of 11

CTIA – The Wireless Association v. Telecommunications Regulatory Board of Puerto Rico     Page 8
Civil No. 12-1104 (FAB/BJM) – Report and Recommendation

other information," it follows that such facts must be a type of "record or other information." See §§ 2703(c)(1), (c)(1)(E), and (c)(2). Second, section 2703(c) means that a governmental entity must avail itself of one of the listed mechanisms before it can require a provider to disclose the subscriber's name, address, connection or session records, service numbers, or means of payment. Since a disclosure "authorized in section 2703" is an exception to liability for disclosure of "a record or other information," § 2702(c)(1), it follows that the disclosures authorized in section 2703 are themselves disclosures of "record[s] or other information" as Congress intended the phrase to be used in section 2702.

Defendants contend that the SCA "does not protect information that is not tied to a specific electronic communication." (Docket No. 14, p. 7). To that end, they cite a number of cases in which a court authorized or rejected disclosures related to specific "transactional" communication records.[5] (Id.). They also point to various pieces of legislative history indicating that Congress intended to protect the interception of specific communications, and information about those communications. (Id., p. 5). From this, they reason that the SCA only reaches such "transactional" records. But "[u]nder settled principles of statutory construction, [courts] first look to whether the statutory text is plain and unambiguous. . . . If it is, 'we must apply the statute according to its terms.'" Hernández-Miranda, 651 F.3d 167, 171 (1st Cir. 2011) (quoting Carcieri v. Salazar, 555 U.S. 379, 129 S. Ct. 1058, 1063-64 (2009)) (internal citation omitted). Reading the text of section 2702 together with its cross-reference to section 2703, Congress plainly enumerated subscribers' names, addresses, and telephone numbers, along with other data, as information protected from disclosure to the government outside the SCA's procedural

---

[5] Defendants cite United States v. Clenney, 631 F.3d 658, 667 (4th Cir. 2011) (SCA prohibited disclosure of, among other information, "the name and address of the customer and basic information regarding incoming and outgoing calls on that phone line."); In re Appl'n of U.S.A. for Order Directing Prov. of Elec. Commc'n Serv. to Discl. Recs. to Gov't, 620 F.3d 304 (3d Cir. 2010) (§ 2703(d) order could reach "historical cell site information" usable to triangulate a subject's past movement); In re § 2703(d), 787 F. Supp. 2d 430 (E.D. Va. 2011) (denying motion to vacate order permitting disclosure of Twitter subscriber information and activity records); In re Appl'ns of U.S.A. for Orders Pursuant to Title 18 U.S.C. § 2703(d), 509 F. Supp. 2d 76, 79-80 (D. Mass. 2007) (holding "historical cell site information" to be non-content record under SCA); and McVeigh v. Cohen, 983 F. Supp. 215 (D.D.C. 1998) (granting preliminary injunction where government's request for AOL subscriber information in connection with an e-mail message likely violated § 2703 requirements). All of these cases, however, only hold that various transactional records come under the SCA; none of them hold that non-transactional information does *not*.

Case 3:12-cv-01104-FAB Document 31 Filed 06/15/12 Page 9 of 11

CTIA – The Wireless Association v. Telecommunications Regulatory Board of Puerto Rico     Page 9
Civil No. 12-1104 (FAB/BJM) – Report and Recommendation

framework. Moreover, the SCA forbids the disclosure of a "record or other information *pertaining to a subscriber to or customer of*" the service. See § 2702(a)(3) (emphasis added). That language is broad, and had Congress wished to reach only transactional records, it could have used narrower terminology.

Finally, based on their assumption that the SCA only reaches transactional records, defendants further suggest that the SCA does not reach the information they seek because they require their disclosures at the time hardware is sold, before any communications "records" can be created. (See Docket No. 14, p. 8; Docket No. 25-1, p. 3). But since the text of sections 2702 and 2703 protect subscriber or customer information regardless of its connection to a particular transactional record, this conclusion is incorrect.

### III.   Preemption

CTIA has stated a plausible claim for conflict preemption under the Supremacy Clause. The Registry Act requires sellers of pre-paid phones to disclose, among other information, the new owner's name, address, and mobile phone number. Law 280, § 5. It also requires telephone companies to turn over a list of all prepaid phone numbers, coupled with any names and addresses it may have. Id. However, an ECS provider is forbidden from disclosing its customers' names, addresses, or telephone numbers to a governmental entity without a subpoena, warrant, court order, request pursuant to a telemarketing fraud investigation, or the customer's consent. See 18 U.S.C. §§ 2702(a)(3), 2702(c)(1), 2703(c). Because it is factually impossible for an ECS provider to disclose the information required under Law 280 without violating § 2702, the Commonwealth law would be preempted. See Antilles Cement Corp., 670 F.3d at 323-24.

Of course, as defendants argue, "there is a strong presumption against preemption" where a state exercises its police power over "the protection of the lives, limbs, health, comfort, and quiet of all persons." (Docket No. 14, p. 9-10) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 475 (1996)). But while they correctly observe that the scope of preemption "must rest primarily

Case 3:12-cv-01104-FAB   Document 31   Filed 06/15/12   Page 10 of 11

CTIA – The Wireless Association v. Telecommunications Regulatory Board of Puerto Rico   Page 10
Civil No. 12-1104 (FAB/BJM) – Report and Recommendation

on a fair understanding of *congressional purpose*," they overlook the Supreme Court's starting point for its analysis: "Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it." Medtronic, 518 U.S. at 485-86 (emphasis in original, citations omitted). Defendants' arguments for cabining the reach of the SCA do not hold water in light of the statute's text, purpose, and function. Simply put, the SCA limits the government's investigative powers to a greater degree than the Fourth Amendment standing alone. See Kerr, *supra*, at 1212-13. Since the SCA's procedural framework expressly restricts access to data that the Registry Act demands the wholesale disclosure of, I find that the presumption against preemption is more than sufficiently overcome.

In sum, CTIA has demonstrated that it has a plausible claim under the Supremacy Clause, and defendants are therefore not entitled to dismissal for failure to state a claim. However, an important issue remains: CTIA has only argued that the Registry Act is unconstitutional because of the conflicting duties it would impose on some of its members, such as AT&T, Sprint, or T-Mobile. Yet Law 280 imposes duties on *all* natural and legal persons, and it is quite likely there are at least some persons who sell pre-paid telephones in Puerto Rico *without* being considered ECS providers under the SCA. Neither side has analyzed this question, which merits significantly closer consideration before any relief is fashioned. Since the contours of relief would ideally be resolved by the parties' settlement and stipulation rather than judicial intervention, I refrain from making further recommendations in this matter pending the district court's review of this report and recommendation.

## CONCLUSION

For the foregoing reasons, I recommend that defendants' motion to dismiss the complaint be **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. Failure to file timely and

Case 3:12-cv-01104-FAB   Document 31   Filed 06/15/12   Page 11 of 11

**CTIA – The Wireless Association v. Telecommunications Regulatory Board of Puerto Rico**      Page 11
Civil No. 12-1104 (FAB/BJM) – Report and Recommendation

specific objections to the report and recommendation is a waiver of the right to appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 15th day of June, 2012.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge