IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CTIA - THE WIRELESS ASSOCIATION,<br><br>    **Plaintiff,**<br><br>          **v.**<br><br>TELECOMMUNICATIONS   REGULATORY<br>BOARD OF PUERTO RICO, *et al.,*<br><br>    **Defendants.** | **CIVIL NO.** 12-1104 (FAB) |

**MEMORANDUM AND ORDER[1] DENYING DEFENDANTS' MOTION TO DISMISS AND REFERRING THE CASE TO MAGISTRATE JUDGE MCGIVERIN FOR FURTHER CONSIDERATION OF PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION AND CONSOLIDATION WITH TRIAL ON THE MERITS**

BESOSA, District Judge

    Before the Court is the Report and Recommendation ("R&R"), (Docket No. 31), regarding (1) plaintiff's motion for a permanent injunction and consolidation with a trial on the merits, (Docket Nos. 1 & 2), and (2) defendants' motion to dismiss plaintiff's claim. (Docket No. 13).  Having considered the magistrate judge's recommendations, along with defendants' objections to the R&R and plaintiff's response to those objections, (Docket Nos. 32 & 33), the Court **ADOPTS** the findings of the magistrate judge and **DENIES** defendants' motion to dismiss.  Moreover, the Court **REFERS** the matter of plaintiff's motion for a permanent injunction to the magistrate judge for further consideration.

---

    [1] Jared Killeen, a second-year student at Brooklyn Law School, assisted in the preparation of this Memorandum and Order.

**DISCUSSION**

## I.  Background

On February 15, 2012, the International Association for the Wireless Communications Industry ("CTIA" or "plaintiff")[2] filed a verified complaint against the following defendants:  the Telecommunications Regulatory Board of Puerto Rico ("the Board"); Sandra E. Torres-Lopez, in her official capacity as president of the Board; Gloria Escudero-Morales and Nixyvette Santini-Hernandez, in their official capacities as associate members of the Board; and Governor Luis Fortuño ("Governor Fortuño"), in his official capacity as governor of the Commonwealth of Puerto Rico (collectively, "defendants").  (Docket No. 1.)  Plaintiff seeks to declare invalid and enjoin the enforcement of Puerto Rico Law No. 280 of December 27, 2011 ("the Registry Act"), claiming that it violates the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, cl. 2, and is preempted by federal law.  Id. at ¶ 1.  On the same date, plaintiff filed a motion for preliminary injunction and consolidation with the trial on the merits.  (Docket No. 2.)  In sum, plaintiff requested that the Court (1) consolidate the hearing on its motion for preliminary injunction with the trial

---

[2] The CTIA is a District of Columbia non-profit corporation that represents all sectors of the wireless phone industry, including providers of wireless services.  Several of CTIA's members – for example, AT&T, Sprint, and T-Mobile – provide customers pre-paid mobile telephone service, which is the subject of the Registry Act.  (Docket No. 1 at ¶¶ 7-8.)

on the merits pursuant to Fed.R.Civ.P. 65; (2) enter a declaratory judgment, pursuant to 20 U.S.C. § 2201, holding that the Registry Act is invalid, null, and void; and (3) enter a preliminary injunction against defendants, pursuant to 28 U.S.C. § 2202, prohibiting them from enforcing or threatening to enforce the Registry Act.

Plaintiff alleges that the Registry Act allows the Board to create and maintain a registry containing personal information of customers who purchase pre-paid mobile telephones. Id. Toward this end, the Registry Act requires that members of CTIA provide the Board with each new customer's name, mailing address, and phone number for inclusion in the registry; moreover, CTIA members must submit the same information regarding customers who have previously purchased a pre-paid mobile telephone. Id. Any "telephone companies [sic], natural or legal persons [sic], or commercial entities [sic]" that violate the provisions of the Registry Act may be found guilty of an administrative offense and fined up to $25,000.00 for each infraction. (Docket No. 2 at p. 4.)

Plaintiff contends, however, that the Registry Act is preempted by the Electronic Communications Privacy Act ("ECPA"), a federal statute meant to protect the privacy of mobile customers. (Docket No. 1 at p. 2.)  A component of the ECPA, the Stored Communications Act, 18 U.S.C. § 2701 ("SCA"), sets forth a comprehensive legislative scheme limiting the manner in which the

government can compel members of CTIA to disclose information concerning their customers.  Id.  Because the Registry Act fails to satisfy even one of the SCA's five enumerated exceptions for disclosure,[3] plaintiff argues, the former stands in direct conflict with the SCA and therefore must be rendered null and void.  Id. at p. 2.

On March 14, 2012, defendants filed a motion to dismiss the complaint, along with an opposition to plaintiff's motion for preliminary injunction.  (Docket Nos. 13 & 14.)  Defendants contend that no conflict exists between the Registry Act and the SCA. (Docket No. 14 at p. 6.)  First, defendants argue that the SCA protects only transactional electronic records[4] or communications, and does not prevent the disclosure of non-transactional customer information, such as a customer's name and address.  Id. at p. 3.

---

[3] The SCA permits a wireless provider to disclose a record or other information to the government (1) when the government entity issues a subpoena or obtains a court order or warrant for the production of customer records; (2) when the customer lawfully consents to disclosure; (3) as may be necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service; (4) if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency; or (5) when the governmental entity submits a formal written request relevant to a law enforcement investigation concerning telemarketing fraud.  See §§ 2702-03.

[4] Defendants go to great lengths to show that, within the scope of the SCA, "records" denote only "transactional records, i.e., records of specific communications."  (Docket No. 13 at p. 5.)

Therefore, defendants reason, the Registry Act does not conflict with the SCA because, in effect, both statutes govern different types of information.  Id. at p. 7.  Defendants also contend that the Registry Act's disclosure requirement is consistent with the third exception to provider liability under the SCA.  Id. at p. 10; see 18 U.S.C. § 2702(c)(3) (disclosure may be necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service).  Thus, according to defendants, even if the SCA does govern disclosure of customer information, the disclosure is permitted pursuant to the Registry Act because it meets an exception set forth by the federal government.  Id.

     Plaintiff opposed defendants' motion to dismiss on March 19, 2012.  (Docket No. 21.)  Plaintiff refutes defendants' argument that the SCA protects only transactional communications, and not non-transactional customer information.  Id. at p. 3.  Plaintiff points to language in the SCA that explicitly limits the disclosure of customer information; specifically, plaintiff cites section 2703(c)(2), which requires that a government entity be granted a statutorily authorized subpoena before it may view the name, address, or service records of a wireless customer.  Id. Despite the fact that defendants purposefully ignore the plain language of the statute, plaintiff contends, it is clear that section 2703(c)(2) of the SCA preempts the Registry Act.  Id.

On June 15, 2012, Magistrate Judge Bruce J. McGiverin issued
an R&R, finding that the Registry Act stands in direct conflict
with the SCA.   (Docket No. 31.)   First, the magistrate judge
correctly found that section 2703(c)(2) of the SCA requires that a
governmental entity obtain a subpoena before it can command a
member of the CTIA to disclose a customer's name or address.  Id.
at p. 8.  The Registry Act, on the other hand, requires disclosure
of this information even in lieu of a governmental subpoena, and
therefore contravenes the SCA.   Id.   The magistrate judge also
found that, contrary to defendants' averments, the Registry Act's
disclosure requirement is not consistent with the third exception
to provider liability under the SCA.   Id. at p. 6.   Again, this
inconsistency reveals a profound conflict between the Registry Act
and the SCA.  For these reasons, the magistrate judge found that
the SCA preempts the Registry Act, and recommends denying
defendants' motion to dismiss.

The magistrate judge also considered plaintiff's motion for
preliminary injunction.  Id. at pp. 9-10.  While the magistrate
judge found that plaintiff has stated a plausible claim for
preemption pursuant to the Supremacy Clause, he noted that an
important issue remains:  plaintiff has argued only that the
Registry Act is unconstitutional because of the conflicting duties
it would impose on some of the CTIA's members, such as AT&T,
Sprint, and T-Mobile; yet the law imposes duties on *all* natural and

legal persons, "and it is quite likely there are at least some persons who sell pre-paid telephones in Puerto Rico *without* being considered [CTIA members] under the SCA." Id. at p. 10.  Thus, the question remains:  should the duties imposed on non-CTIA members by the Registry remain in force even when the Registry Act cannot require CTIA members to disclose customer information?  The magistrate judge refrained from making a further recommendation until both parties have properly addressed this issue.  Id.

On June 29, 2012, defendants filed an objection to the magistrate judge's R&R.  (Docket No. 32.)  The same arguments are made again, with defendants adamantly maintaining that the SCA is intended to govern only transactional communications, and not stand-alone customer information.  Id. at p. 8.  To further their argument, defendants submit several excerpts from the SCA's legislative history, along with a smattering of case law and secondary sources.  Nowhere, however, do defendants adequately address the matter of section 2703(c)(2), preferring to champion the intuited "purpose" of the statute over the clear meaning of its text.  Id. at p. 6.

Plaintiff responded to defendants' objection on July 11, 2012, supplying its own examples of legislative history and case law.  (Docket No. 33.)  On the same day, plaintiff renewed its motion for

permanent injunction[5] and consolidation with the trial on the
merits. (Docket No. 34.) Plaintiff addresses the issue set aside
by the magistrate judge, arguing that because the Registry Act
cannot regulate CTIA members, it should not regulate non-members
either. Id. at pp. 3-7. In other words, the unconstitutional
provisions of the Registry Act cannot be severed, and even if they
could, the remaining portions of the law could not stand on their
own. Id. Therefore, plaintiff contends that the Court should
strike down the Registry Act *in toto.* Id. at p. 7.

On July 24, 2012, defendants renewed their motion to dismiss
the complaint and an opposition to plaintiff's motion for a
permanent injunction. (Docket No. 35.) Defendants' argument
amounts to one simple proposition: "[i]f the Court grants
Defendants' Motion to Dismiss, [plaintiff]'s Motion for Permanent
Injunction would be moot." Id. at p. 2. Defendants also stipulate
that, like plaintiff, they seek resolution of the Registry Act *in
toto,* and do not ask the Court to address the possibility of
severing application of the law to non-CTIA members. Id. at p. 3.

---

[5] This time around, plaintiff filed a motion for permanent –
rather than preliminary – injunction, reasoning that because the
SCA preempts the Registry Act as it applies to telecommunications
service providers, "there is no reason not to grant Plaintiff's
request for a permanent injunction." (Docket No. 34 at p. 2.

## II. Legal Analysis

### A.   Standard Under 28 U.S.C. § 636(b)(1)

A district court may refer a case to a magistrate judge for a report and recommendation.  See 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Loc. Rule 72(b).  Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report. See 28 U.S.C. § 636(b)(1).  A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made."  Sylva v. Culebra Dive Shop, 389 F.Supp.2d 189, 191-92 (D.P.R. 2005) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)).  Failure to comply with this rule precludes further review.  See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).  In conducting its review, the court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (a)(b)(1).  Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985); Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146 (D.P.R. 2003). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object.  See Hernandez-Mejias v. General Elec., 428 F.Supp.2d 4, 6 (D.P.R. 2005)

(citing <u>Lacedra v. Donald W. Wyatt Detention Facility</u>, 334 F.Supp.2d 114, 125-126 (D.R.I. 2004)).

### B.   Legal Standard Pursuant to Rule 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint when it fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).  When considering a motion pursuant to Rule 12(b)(6), a court must accept the "well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his [or her] favor." <u>Medina-Claudio v. Rodriguez-Mateo</u>, 292 F.3d 31, 34 (1st Cir. 2002).  "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." <u>Ocasio-Hernandez v. Fortuño-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011).  When faced with a motion to dismiss, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." <u>Id.</u> at 12 (quoting <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1950 (2009)).  Any "[n]on-conclusory factual allegations in the complaint [, however,] must . . . be treated as true, even if seemingly incredible." <u>Id.</u> (citing <u>Iqbal</u>, 129 S.Ct. at 1951). Where those factual allegations "'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." <u>Id.</u> (quoting <u>Iqbal</u>, 129 S.Ct. at 1949).  Furthermore, a court may not "attempt to forecast a plaintiff's likelihood of success on the

merits; 'a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely'." <u>Id.</u> at 13 (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)). The relevant inquiry, therefore, "focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." <u>Id.</u>

## III. Discussion

### A.   Defendants' Motion to Dismiss

Defendants object to the magistrate judge's finding that a conflict exists between the SCA and the Registry Act. (Docket No. 32.)  They take issue with "the broad definition of record" adopted by the magistrate judge, which defendants see as the cause of this conflict.  <u>Id.</u> at pp. 4-5.  Within the scope of the SCA, defendants argue, "records" refer only to "transactional records, i.e., records of specific communications." <u>Id.</u> at p. 5.  Thus, according to defendants, non-transactional customer information – such as a customer's address – is not a true "record" and, therefore, is not protected from disclosure by the SCA.  <u>Id.</u> at p. 8.  Because the Registry Act seeks disclosure of only non-transactional records, and because customer information is non-transactional, the Act remains "in perfect congruence with the SCA." <u>Id.</u> at p. 10.  To support this theory, defendants turn to some selectively edited excerpts from the SCA's legislative

history, hoping to reveal the true "purpose" of the law to the disbelieving CTIA. <u>Id.</u> at p. 6.

Defendants' analysis, however, is as unnecessary as it is unavailing. There is only one text that requires the Court's scrutiny, and that is the SCA itself: section 2703(c)(2) unambiguously states that a government entity must garner a statutorily authorized subpoena before it may view the name or address of a wireless customer. <u>See</u> <u>BeedRoc Ltd., LCC v. U.S.</u>, 541 U.S. 176, 183 (2004) (when interpreting a statute, "the inquiry begins with the statutory text, and ends there as well if the text is unambiguous"); <u>Saysana v. Gillen</u>, 590 F.3d 7, 13 (1st Cir. 2009) (the first step of interpretation is to focus on the statutory language itself). The clarity of this text renders defendants' parsing of the word "record" useless; moreover, any speculation regarding the ultimate "design" or "purpose" of the SCA arising from the statute's legislative history becomes moot.[6] <u>See</u> <u>BedRoc Ltd., LCC</u>, 541 U.S. at 177 (when the statutory text is unambiguous,

_____

[6] Even if we were to consult the legislative history, we would find, contrary to defendants' suggestion, that it underscores the SCA's protection of "information about the customer's use of the service" and not just "the content of the customer's communications." (Docket No. 33 at p. 5.) As plaintiff notes, "[t]aking the legislative history as a whole, rather than focusing on select snippets and ignoring the rest, it simply cannot be read to support Defendants' position." <u>Id.</u> at p. 6. Similarly, the case law cited by defendants provides only tenuous support for their theory: as the magistrate judge notes, all of these cases hold that various transactional records fall under the SCA, but do not preclude the inclusion of non-transactional information. (Docket No. 31 p. 8, FN 5.)

there is no occasion to resort to legislative history); Saysana, 590 F.3d at 16 (the Court approaches "all arguments based on legislative history with significant caution").  It is evident, even at first glance, that the SCA and the Registry Act regulate the same information; the SCA prohibits the disclosure of that information outside of the appropriate legal process, while the Registry Act permits disclosure of the same information without so much as a subpoena.  Therefore, the two laws stand in undeniable contravention to each other.  Although "there is a strong presumption against preemption," Medtronic, Inc. v. Lohr, 518 U.S. 470, 475 (1996), the Court finds that plaintiff has stated a plausible claim for conflict preemption under the Supremacy Clause. See Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 323-24 (1 Cir. 2012) ("when a state law directly conflicts with a federal statute – such as where it is physically impossible to comply with both laws or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress – we can presume that Congress intended preemption to occur").  For this reason, the Court **DENIES** defendants' motion to dismiss.[7]

---

[7] Defendants raise no objection to the magistrate judge's finding that the Registry Act's disclosure requirement is not consistent with the third exception to provider liability under the SCA. (Docket No. 31 at p. 6.)  Therefore, we decline to review this element of defendants' argument. See Hernandez-Mejias, 428 F.Supp.2d at 6 (citing Lacedra, 334 F.Supp.2d at 125-126) (the Court may accept those parts of the report and recommendation to which the parties do not object).

**B.    Plaintiff's Motion for Permanent Injunction**

Plaintiff seeks an injunction against the Registry Act, pursuant to 28 U.S.C. § 2202, prohibiting defendants from enforcing or threatening to enforce the statute.  (Docket Nos. 2 at p. 3; 34 at p. 2.)  Like this Court, the magistrate judge found that the presumption against preemption is more than sufficiently overcome.  (Docket No. 31 at p. 10.)  The magistrate judge, however, declined to issue a recommendation regarding the injunction, finding instead that the matter required more analysis by both parties.  Id.  The magistrate judge invited the parties to consider whether the proposed injunction should extend to "*all* natural and legal persons" who sell pre-paid telephones in Puerto Rico "*without* being considered [CTIA members] under the SCA."  Id.  In other words, should the duties imposed on non-CTIA members by the Registry Act remain in force even when the Act cannot require CTIA members to disclose customer information?  In response, plaintiff submitted a renewed motion for injunction, arguing that the unconstitutional provisions of the Registry Act cannot be severed, and even if they could, the remaining portions of the law could not stand on their own.  Id. at pp. 3-7.  Therefore, plaintiff contends that the Court should strike down the Registry Act *in toto,* extending the injunction to all persons.  Id. at p. 7.  Defendants, in their opposition to the motion for permanent injunction, also "seek resolution on the merits of the Registry Act *in toto* . . . . "

Civil No. 12-1104 (FAB)                                                    15

(Docket No. 35 at p. 3.)  With this in mind, the Court refers the matter of plaintiff's motion for permanent injunction back to the magistrate judge for further consideration.

CONCLUSION

For the reasons described above, defendants' motion to dismiss is **DENIED**.  Plaintiff's motion for a permanent injunction remains pending and is **REFERRED** to Magistrate Judge McGiverin for a hearing, if necessary, and a Report and Recommendation.  Any hearing on that motion will be set according to the magistrate judge's schedule.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 2, 2012.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE